IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANNY MCDOWELL,

    Plaintiff,                    No. CIV S-06-2145 MCE GGH (TEMP) P

   vs.

J.L. BISHOP, et al.,

    Defendants.             FINDINGS AND RECOMMENDATIONS

_____/

       Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983. Defendant Ginder (defendant) is employed by the California Department of Corrections and Rehabilitation at High Desert State Prison (HDSP) as a correctional officer. Defendant's motion for summary judgment is before the court. Plaintiff's claims against defendant Ginder arise under the First and Eighth Amendments. See November 20, 2009 Order.

I. Summary Judgment Standard

       Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

/////

1

1         Under summary judgment practice, the moving party
always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any," which it believes
demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

        If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On January 30, 2008 the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

/////

II. <u>Plaintiff's Allegations</u>[1]

Plaintiff asserts that on March 25, 2005 at HDSP, defendant and others attacked plaintiff in retaliation for his filing prisoner grievances and threatening to file grievances. Plaintiff alleges defendant, among other things, "slammed him to the floor," slammed his face against plaintiff's cell door, slammed plaintiff's head onto the railing on a stairway, dropped plaintiff on his face and placed restraints on plaintiff that were so tight they cut into his skin. As a result of these actions, plaintiff sustained injuries including a broken right elbow.

III. <u>Eighth Amendment</u>

Defendant admits that he used physical force against plaintiff on March 25, 2005, but denies that the amount of force used violated plaintiff's Eighth Amendment rights. In order to establish excessive force in violation of the Eighth Amendment, plaintiff must show that he has been subjected to the wanton and unnecessary infliction of pain. <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986). The Ninth Circuit has relied on the following factors in determining whether an officer's application of force was undertaken in a good faith or maliciously and sadistically to cause harm: 1) the extent of the injury suffered by an inmate; 2) the need for application of force; 3) the relationship between that need and the amount of force used; 4) the threat reasonably perceived by the responsible officials; and 5) any efforts made to temper the severity of a forceful response. <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir. 2003).

Both parties have submitted declarations concerning the events of March 25, 2005. The parties agree that at the beginning of the incident, plaintiff was seated in a chair in an office at HDSP wearing physical restraints, defendant and others assisted in delivering plaintiff from the office to his cell and, at the end of the relevant events, plaintiff was left in his cell with the restraints having been removed. The parties disagree as to what happened during the transfer from the office to plaintiff's cell.

---

[1] The operative complaint was filed on May 29, 2007 (docket entry #15).

4

Plaintiff asserts that during the incident defendant:

1. Snatched plaintiff from the ground by handcuffs attached to plaintiff.

2. Participated in dropping plaintiff on his face while transporting him.

3. Participated in twisting plaintiff's wrists, arms and ankles causing him extreme pain.

4. Participated in pushing plaintiff to the floor causing plaintiff to hit his face and lips.

5. Caused injuries to plaintiff's elbow and bleeding.

Pl's Decl. at ¶¶ 4-5.[2]

Defendant denies that he ever struck plaintiff in any gratuitous manner. Rather, defendant indicates that he simply assisted other officers in returning plaintiff to his cell because plaintiff failed to return to his cell under his own power by going "limp." Def.'s Decl. at ¶¶ 5-21. Defendant submits other evidence in support of his version of the events including a DVD. Officer E. Lopez declares the DVD is a copy of a recording he made onto an 8mm tape of the transfer of plaintiff from the office to his cell. While the recording essentially supports defendant's version of the events occurring March 25, 2005, the court does not consider it.

Under Federal Rule of Evidence 1002, the court can only consider a video recording as proof that the events depicted actually occurred if the recording is the original recording. Under Rule 1003, the court can consider a duplicate in the same manner it can consider an original as long as there is no genuine question raised as to the authenticity of the original. Plaintiff asserts that he has never been allowed to see the original recording of his being transported to his cell and that the DVD that has been provided to the court is essentially a fraud. On December 20, 2010, the court ordered defendant to allow plaintiff the opportunity to view the

---

[2] Plaintiff submits other evidence in support of exhibits. None of the exhibits are admissible because, among other things, they have not been authenticated as required by Federal Rule of Evidence 901. To the extent the court does not discuss evidence presented by plaintiff, the court has not considered it.

1 original if it could be found. On January 31, 2011, counsel for defendant indicated that the
2 original was found, but, due to logistical issues, plaintiff had not been allowed to view it.
3 Considering plaintiff has never been allowed to see the original recording of the events of March
4 25, 2010, he has not been given an adequate opportunity to make an objection under Rule 1003
5 to the DVD before the court.

6        After considering all the admissible evidence before the court, the court finds
7 there is genuine issue of material fact as to whether defendant used excessive force against
8 plaintiff on March 25, 2005. Essentially, and without consideration of the video, it is plaintiff's
9 word against the word of prison officials as to whether the facts alleged by plaintiff in support of
10 his excessive force claim are true and the court cannot find that plaintiff's version is so
11 unreasonable that a rational trier of fact could not find in his favor.

12        The undersigned will reconsider this finding at pretrial conference if plaintiff has
13 been afforded an opportunity to review the original. If plaintiff has been so afforded this
14 opportunity, the court will view the authenticated copy subject to specific objection by plaintiff.
15 Plaintiff is advised that a general conclusion that the copy of the video is a "fraud," will not
16 suffice. Plaintiff must detail what about the copy makes it a fraud.

17 III. <u>First Amendment</u>

18        As indicated above, plaintiff alleges that the force used against him by defendant
19 on March 25, 2005 was in retaliation for plaintiff filing prisoner grievances, and threatening to
20 file grievances. Prison officials generally cannot retaliate against inmates for exercising First
21 Amendment rights. <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531 (9th Cir. 1985). A prisoner suing
22 prison officials under section 1983 for retaliation must show that he was retaliated against for
23 exercising his constitutional rights and that the retaliatory action does not advance legitimate
24 penological goals, such as preserving institutional order and discipline. <u>Bruce v. Ylst</u>, 351 F.3d
25 1283, 1288 (9th Cir. 2003). Plaintiff must establish a nexus between the retaliatory act and the
26 protected activity. <u>See</u> <u>Huskey v. City of San Jose</u>, 204 F.3d 893, 899 (9th Cir. 2000).

The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).

Defendant asserts his participation in the events on March 25, 2005 was based solely on the fact that he was ordered to assist other officers in physically returning plaintiff to his cell because plaintiff was refusing to do so voluntarily. Decl. of J. Ginder at ¶ 3-6. Assuming defendant took some sort of adverse action against plaintiff during the transfer of plaintiff from the prison office to plaintiff's cell, plaintiff fails to point to any evidence suggesting that defendants's actions were motivated in any way by the fact that plaintiff had either filed prisoner grievances in the past, that plaintiff had threatened to file grievances or some other exercise of plaintiff's First Amendment rights. Therefore, the court will recommend that defendant be granted summary judgment as to plaintiff's claim against defendant arising under the First Amendment.

IV. Qualified Immunity

Defendant asserts he is immune for suit with respect to plaintiff's Eighth Amendment claim under the "qualified immunity" doctrine.[3] Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a governmental officer is immune from suit based on the doctrine of qualified immunity, the court must answer two questions. The first is, do the facts alleged show the officer's conduct violated a constitutional right? Saucier v. Katz, 533 U.S. 194, 201 (2001). The second is was the right "clearly established?" Id. "If the law did not put the [defendant] on notice that [his] conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id. at 202.

---

[3] Defendant does not argue he is entitled to immunity under the "qualified immunity" doctrine with respect to plaintiff's First Amendment claim.

As indicated above, there are at least genuine issues of material fact with respect to plaintiff's claim that defendant subjected him to excessive force in violation of the Eighth Amendment. Further, the law with respect to excessive force which is outlined above was clearly established when all of the actions relevant to plaintiff's claim took place. Therefore, defendant is not immune from plaintiff's Eighth Amendment claim under the doctrine of "qualified immunity."

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendant Ginder's motion for summary judgment (#97) be granted with respect to plaintiff's First Amendment claim, and denied without prejudice to renewal at pretrial conference with respect to plaintiff's Eighth Amendment claim;

2. Plaintiff be ordered to file an amended pretrial statement concerning all remaining defendants and claims within thirty days of an order adopting the foregoing findings and recommendations. Defendants should be ordered to file their pretrial statement within twenty-one days of service of plaintiff's.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 8, 2011

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

kc
mcdo2145.57